DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after the court found defendant-appellant, Mario A. Holmes, guilty of one count of aggravated robbery in a trial to the bench. From that judgment, Holmes now raises the following assignments of error for our review:
 {¶ 2} "I. The evidence presented at trial was insufficient to prove the element of serious physical harm.
 {¶ 3} "II. The conviction was against the manifest weight of the evidence.
 {¶ 4} "III. The trial court committed plain error by ordering defendant pay [sic] court-appointed attorney fees."
 {¶ 5} On the evening of December 16, 2000, Ashleigh Napier and Niccole Lizcano were working their regular jobs at a Little Caesar's pizza shop in Oregon, Lucas County, Ohio. Lizcano was the manager and Napier, then fifteen years old, had worked there for several months. As their shift began, Lizcano told Napier that Lizcano's boyfriend and his cousin were going to rob the store that night and that if Napier cooperated and did not say anything Lizcano would give her $100. Napier testified at the trial below that Lizcano was known to exaggerate and had a tendency to talk a lot, so Napier did not believe her. At approximately 11:00 p.m., two masked men entered the restaurant and ordered Lizcano and Napier into the walk-in cooler. They then asked who was the manager and Lizcano raised her hand. One of the men then removed Lizcano from the cooler and told her to get the money. In addition, one of the assailants brandished a handgun, ordered Napier to turn around and said he would shoot her if she did not comply. Lizcano emptied the safe and cash register for the men, who then left. Napier testified that during the robbery she was scared and could not believe that the robbery was actually happening. She later told Lizcano that she did not want the $100.
 {¶ 6} After the perpetrators left the pizza shop, Lizcano called the police and the regional manager, Robert Meyer, to report the robbery. Officer Brian Emch of the Oregon Police Department was the first officer to respond to the scene. Officer Emch testified that when he arrived, he met the two female employees who were visibly upset and crying. He took initial statements from the girls without separating them and then began an investigation. Neither girl mentioned that the robbery was staged. Subsequently, Detective William Daniels of the Oregon Police Department arrived and the officers discovered footprints in the snow outside of the shop. Following the footprints, Detective Daniels discovered a handgun. Subsequent tests, however, revealed that the gun was missing a firing pin and was therefore inoperable. While still at the scene of the robbery, Detective Daniels interviewed Lizcano and Napier independently, but, again, neither girl told him that the robbery was staged. Napier testified that she did not reveal the true nature of the robbery at that time because she feared that the assailants knew who she was and might harm her. She could not, however, identify the assailants because she had never seen them before and they wore masks during the robbery.
 {¶ 7} Subsequently, Detective Daniels arranged another interview with Napier which was scheduled for January 5, 2001. The day before that meeting was to take place, Napier revealed to her mother the true nature of the robbery. Napier's mother convinced her to tell the truth. Napier then met with Detective Daniels and told him that she was offered $100 to keep quiet about the staged robbery. As a result of that interview, Detective Daniels re-interviewed Lizcano who identified Mario Holmes and Gordon Hood as the perpetrators.
 {¶ 8} On March 9, 2001, Holmes and Hood were indicted by the Lucas County Grand Jury on one count of aggravated robbery with a firearm specification and one count of theft with a firearm specification. On September 12 and 14, 2001, a trial to the court was held on the charges, at the conclusion of which both defendants were found guilty of one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first degree felony. Subsequently, appellant was sentenced to serve three years in prison on the aggravated robbery conviction. In addition the court ordered appellant to pay all prosecution costs and any fees permitted pursuant to R.C. 2929.18(A)(4). It is from that judgment that Holmes now appeals.
 {¶ 9} Because they are interrelated, we will address the first and second assignments of error together. Holmes asserts that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 10} The Supreme Court of Ohio has ruled that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. However, under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Since appellant's assignments of error encompass both sufficiency and manifest weight issues, we must apply both standards.
 {¶ 11} Appellant was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1). R.C. 2911.(A) reads:
 {¶ 12} "(A) No person, in attempting or commiting a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 13} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 {¶ 14} "(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
 {¶ 15} "(3) Inflict, or attempt to inflict, serious physical harm on another."
 {¶ 16} Appellant asserts that his conviction should be reversed because there was insufficient evidence at the trial below to prove that he inflicted or attempted to inflict serious physical harm on Napier during the commission of the theft offense. He also argues that because Napier was essentially a complicitor to the crime, the state could not prove that she sustained serious physical harm. As is clear from a reading of the statute, however, serious physical harm is not a necessary element for a conviction of aggravated robbery under R.C. 2911.01(A)(1), the section of the statute under which appellant was convicted. That provision simply requires the state to prove that the defendant committed or attempted to commit a theft offense while having a deadly weapon on or about his person or under his control and either displayed it, brandished it, indicated his possession of it or used it.
 {¶ 17} In the present case, the evidence presented at the trial below established that appellant and Hood committed a theft offense while displaying and brandishing a handgun. In addition, Napier testified that one of the assailants told her he would shoot her if she did not turn around. The fact that the handgun was inoperable is of no consequence to an aggravated robbery conviction. State v. Gaines (1989),46 Ohio St.3d 65, 68, modified on different grounds in State v. Murphy
(1990), 49 Ohio St.3d 260. As the court in Gaines stated: "* * * where the weapon used is inoperable, it may nevertheless be considered a deadly weapon even though it is not a firearm. Accordingly, convictions for aggravated robbery have been upheld even where a toy gun or an inoperable gun was used in the commission of the theft offense since such devices could be used as bludgeons and were therefore `capable of inflicting death' pursuant to R.C. 2911.01(A)(1) and 2923.11(A)." Id.
 {¶ 18} Accordingly, there was sufficient evidence presented at the trial below to convince any rational trier of fact that appellant was guilty of aggravated robbery beyond a reasonable doubt. We further conclude that appellant's conviction was supported by the manifest weight of the evidence. The first and second assignments of error are therefore not well-taken.
 {¶ 19} In his third assignment of error, appellant asserts that the trial court committed plain error in ordering him to pay court-appointed attorney fees. The state concedes that the court did err in that regard. Nevertheless, our review of the sentencing order and the transcript from the sentencing hearing reveals no order by the trial court which can be construed as ordering appellant to pay his court-appointed attorney's fees.
 {¶ 20} During the sentencing hearing below, the court, in imposing sentence stated in relevant part: "It'll be the order of the Court that you be remanded to the care, custody and control of the Ohio Department of Rehabilitations and Corrections for a period of three years and ordered to pay the costs of prosecution." Similarly, in the judgment entry of sentence, the court ordered that appellant "pay any restitution, all prosecution costs, and any fees permitted pursuant to R.C. 2929.18(A)(4)." R.C. 2947.23 requires a trial court, in all criminal cases, to "include in the sentence the costs of prosecution and render a judgment against the defendant for such costs." The "costs of prosecution" do not include the defendant's attorney fees but, rather, are the court costs incurred in the prosecution of the case. Only pursuant to R.C. 2941.51 can a trial court order a criminal defendant to pay his appointed counsel's fees. That section was in no way referenced by the trial court's order. Nevertheless, we do find plain error in the trial court's order in the following respect.
 {¶ 21} R.C. 2929.18(A)(4) allows a trial court to impose as part of a sanction the costs of confinement. Before imposing such a sanction, however, "the court shall consider the offender's present and future ability to pay the amount of the sanction[.]" R.C. 2929.19(B)(6). Although the court is not required to hold a hearing to make this determination, R.C. 2929.18(E), there must be some evidence in the record that the court considered the offender's present and future ability to pay the sanction imposed. State v. Fisher (Apr. 29, 2002), Butler App. No.
 {¶ 22} CA98-09-190.
 {¶ 23} In the present case, there is nothing in the record which would indicate that the trial court considered appellant's present and future ability to pay "any fees permitted pursuant to R.C. 2929.18(A)(4)." Nothing from the presentence investigation report reveals that appellant has any means by which to pay the fees and the court did not question him at the sentencing hearing regarding any present or future ability to pay. Moreover, there was no evidence in the record from which a court could infer that appellant had a present or future ability to pay. Accordingly, although we find the third assignment of error not well-taken, we do find plain error in the trial court's judgment of sentence.
 {¶ 24} On consideration whereof, the court finds that the judgment of the Lucas County Court of Common Pleas is affirmed as to the conviction for aggravated robbery and reversed as to the court's order that appellant pay any fees permitted pursuant to R.C. 2929.18(A)(4). This case is remanded to the trial court for further proceedings to determine appellant's present and future ability to pay any fees permitted pursuant to R.C. 2929.18(A)(4). Each party is ordered to pay their own court costs of this appeal.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
Peter M. Handwork, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.